# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2018-NMSC-031

Filing Date: April 23, 2018

Docket No. S-1-SC-35757

STATE OF NEW MEXICO,

      Plaintiff-Appellant,

v.

ISAAC MARTINEZ,

      Defendant-Appellee,

consolidated with

STATE OF NEW MEXICO,

      Plaintiff-Appellant,

v.

CARLA CASIAS,

      Defendant-Appellee.

**CERTIFICATION FROM THE NEW MEXICO COURT OF APPEALS**
**John M. Paternoster, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellant

Coberly & Martinez, LLLP
Todd A. Coberly
Santa Fe, NM

for Appellees

1

The Law Office of Ryan J. Villa
Ryan J. Villa
Albuquerque, NM

for Amicus Curiae New Mexico Criminal Defense Lawyers Association

**OPINION**

**DANIELS, Justice.**

**{1}** In this case we address whether a court may dismiss an indictment because evidence considered by the grand jury had been developed through use of unlawful subpoenas. We confirm almost a century of judicial precedents in New Mexico and hold that, absent statutory authorization, a court may not overturn an otherwise lawful grand jury indictment because of trial inadmissibility or improprieties in the procurement of evidence that was considered by the grand jury.

## I. BACKGROUND

**{2}** Defendants Isaac Martinez and Carla Casias were each indicted on one count of armed robbery and one count of conspiracy to commit armed robbery.

**{3}** Early in the investigation of the robbery, a police detective enlisted the help of the deputy district attorney in the Eighth Judicial District, who prepared and authorized service of what purported to be judicial subpoenas duces tecum (the subpoenas) to obtain records of calls and text messages of suspects from their cellular telephone providers.

**{4}** These purported subpoenas represented on their face that they were issued in the name of the Eighth Judicial District Court, although at the time of their preparation and service there was no pending prosecution, court action, or grand jury proceeding. Over signature of the deputy district attorney, some of these purported subpoenas ordered production of "Call Detail Records, and Text Message Detail" for the specified phones, all ordered subscriber information, and all ordered production to the Taos Police Department with the warning, "IF YOU DO NOT COMPLY WITH THIS SUBPOENA, you may be held in contempt of court and punished by fine or imprisonment." These early subpoenas were filed with the district court in a miscellaneous court docket, rather than a criminal or grand jury docket, but they were styled as "State of New Mexico, Plaintiff, vs. John Doe, Defendant."

**{5}** The detective used information gained from the early subpoenas to obtain search warrants for additional evidence. For example, the original subpoenas revealed the phone numbers Defendants called and texted around the time of the crime as well as text message detail for some subpoenas, but the judicially issued warrants obtained both the content of text messages for the phone of Defendant Casias and records that would help establish

2

geographical location information for the phone of Defendant Martinez at the time of the crime. The district court eventually issued a warrant for the arrest of Defendant Martinez that relied entirely on facts learned through use of the subpoenas.

**{6}** After this sequence of events and through use of information developed as a result of the subpoenas, a grand jury indicted Defendants for the armed robbery. On the day after the indictment, the district court issued a warrant for the arrest of Defendant Casias, and the State joined Defendants' cases. After two months of pretrial proceedings, Defendants moved to quash the indictment or alternatively to suppress all evidence obtained through the use of the contested subpoenas. The Eighth Judicial District Court granted the motion and quashed the indictment. The court reasoned that the preindictment subpoenas were unlawful and that by presenting the grand jury with evidence obtained through their use the deputy district attorney had tainted the grand jury proceedings.

**{7}** The State appealed the dismissal to the Court of Appeals, which certified the issue to us for resolution, citing a conflict between (1) our precedents holding that an indictment duly returned into court and regular on its face cannot be challenged with respect to the kind and degree of evidence considered by the grand jury and (2) the broad wording of a recent amendment to our Rules of Criminal Procedure, Rule 5-302A NMRA, providing in pertinent part that "the grand jury proceedings, the indictment, and the lawfulness, competency, and relevancy of the evidence shall be reviewable by the district court."

**{8}** In its certification, the Court of Appeals noted that application of Rule 5-302A "appears to invite a level of intrusion into the grand jury process that will be altogether new in New Mexico, invite litigation that has historically been limited to circumstances of evidence insufficiency and prosecutorial bad faith, and bears the capacity to undermine the independence of the grand jury." But the Court of Appeals also expressed concern that reversing the district court would require it to disregard the wording of Rule 5-302A and encroach on the Supreme Court's exclusive authority to exercise superintending control over the rules of procedure in our courts. We accepted certification and set this matter for full briefing and argument.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

**{9}** NMSA 1978, Section 34-5-14(C) (1972), provides jurisdiction in this Court over matters certified to us by the Court of Appeals if "the matter involves: (1) a significant question of law under the constitution of New Mexico or the United States; or (2) an issue of substantial public interest that should be determined by the supreme court."

**{10}** This case meets both criteria. First, the grand jury is a constitutional institution, *see* N.M. Const. art. II, § 14, and as the following discussion will show, the integrity and independence of the grand jury have been vigorously protected by both the legislative and

3

judicial branches in statutes and case law. Consequently, a question about when grand jury indictments may be overturned is legally significant. Second, because the grand jury represents an important safeguard for individuals against unfounded criminal charges, its independence and functioning are matters of substantial public interest. A significant additional consideration is that conflicts between a statute, this Court's case law interpreting the statute, and this Court's procedural rules call for definitive resolution by this Court.

**{11}** There being no material facts in dispute, this case presents pure questions of law that we review de novo. *State v. Rowell*, 1995-NMSC-079, ¶ 8, 121 N.M. 111, 908 P.2d 1379.

**B.      The Use of Subpoenas Issued Without Authority Was Unlawful**

**{12}** At the outset, we recognize that the judicial subpoenas issued unilaterally by the deputy district attorney in the absence of any pending court or grand jury proceeding were unlawful. We have so held in a precedential opinion in the related disciplinary case against both the former deputy district attorney and the District Attorney for the Eighth Judicial District where the subpoenas originated, and there is no need to rearticulate the supporting reasons here. *See In re Chavez*, 2017-NMSC-012, ¶¶ 1-2, 390 P.3d 965.

**{13}** While noting that the deputy district attorney and district attorney apparently had not acted in bad faith, *id.* ¶ 24, we held in *Chavez* that the purported subpoenas were unlawful because they were issued unilaterally outside the authority of a pending court case or grand jury investigation, *id.* ¶¶ 2, 16, 19, and we formally reprimanded both attorneys, *id.* ¶ 25. As we explicitly held in that published precedential opinion, "it is unlawful for a court or an officer of the court to issue any subpoena in the absence of a pending judicial action." *Id.* ¶ 2.

**{14}** But *Chavez* dealt solely with attorney discipline and did not address any evidentiary or procedural consequences arising from the unlawful subpoenas. In this case, we must address whether their use was fatal to the validity of a grand jury indictment that was obtained on the basis of the evidence the subpoenas helped to uncover.

**C.      New Mexico Statutory and Case Law Preclude Judicial Review of the Legality or Admissibility of Evidence Considered by the Grand Jury**

**{15}** Beginning with *State v. Chance*, 1923-NMSC-042, 29 N.M. 34, 221 P. 183, our first precedent on the issue almost a century ago, and despite various amendments of New Mexico grand jury statutes, this Court has consistently honored a strong policy of resisting dismissal of otherwise valid grand jury indictments based on disputes about the source or trial admissibility of the evidence considered by the grand jury. *See, e.g.*, *Buzbee v. Donnelly*, 1981-NMSC-097, ¶ 83, 96 N.M. 692, 634 P.2d 1244 (citing *Chance*, 1923-NMSC-042, ¶ 8).

**{16}** The first New Mexico statutes relating to the kind of evidence a grand jury should

consider were enacted early in our territorial history as part of the Act of February 7, 1854. *See* 1853-54 N.M. Laws, Ch. II, §§ 1-15 at 56, 66-68, 74 (recompiled after statehood as NMSA 1915, §§ 3124-3138 (1854)) (regulating various aspects of the functioning of grand juries). The evidentiary provisions included directions that the grand jurors could receive no other evidence than "[s]uch as is given by witnesses, produced and sworn before them," and "[b]y legal documentary evidence," NMSA 1915, § 3128 (1854), and that "[t]he grand jury can receive none but legal evidence and the best evidence in degree, to the exclusion of hearsay or secondary evidence," NMSA 1915, § 3129 (1854).

**{17}**   In 1923, this Court considered for the first time whether those broad statutory commands authorized a reviewing court to evaluate the sufficiency or legality of evidence that the grand jury had considered in returning an indictment. *See Chance*, 1923-NMSC-042, ¶¶ 2, 8. *Chance* determined that the provisions of NMSA 1915, Section 3129 (1854), provided no such clear statutory authority for judicial oversight of the evidence considered by the grand jury, holding that those provisions were "directory and [were] for the guidance of the grand jury." *Chance*, 1923-NMSC-042, ¶ 8. In a holding that has never been reversed, *Chance* concluded that the grand jury

> is a judicial tribunal with inquisitorial powers, and, unless there is some clear statutory authority to do so, we think the courts are without power to review its action to determine whether or not it had sufficient or insufficient, legal or illegal, competent or incompetent evidence upon which to return an indictment.

*Id.*

**{18}**   The 1854 version of the grand jury statutes construed in *Chance* remained unaltered for over 115 years until the 1969 addition of "other physical evidence" to the witness testimony and documentary evidence previously approved in the statutes as acceptable evidence for submission to the grand jury, and expansion of the definition of permissible evidence to provide that "[a]ll evidence must be such as would be legally admissible upon trial." NMSA 1953, § 41-5-11(A) (1969 N.M. Laws, ch. 276, § 11).

**{19}**   In several reported decisions, New Mexico appellate courts held that *Chance*'s holding was still controlling law after the 1969 statutory amendments. The fact that "the legislature in amending the laws pertaining to grand juries in 1969 still did not see fit to give the courts authority to review the sufficiency of evidence to support grand jury indictments" was significant. *State v. Paul*, 1971-NMCA-040, ¶ 11, 82 N.M. 619, 485 P.2d 375 (rejecting the contention that *Chance* should be overruled or distinguished), *superseded by rule on other grounds as stated in State v. Elam*, 1974-NMCA-075, ¶ 9, 86 N.M. 595, 526 P.2d 189; *see also State v. Ergenbright*, 1973-NMSC-024, ¶ 4, 84 N.M. 662, 506 P.2d 1209 (citing *Chance* and *Paul* as support for holding that "[t]here is no provision in New Mexico law for judicial review of the evidence considered by a grand jury").

**{20}** In *State v. Stevens*, 1979-NMCA-058, 93 N.M. 434, 601 P.2d 67, the district court had dismissed an indictment because a statement of the defendant that had been suppressed as inadmissible trial evidence in an earlier proceeding had subsequently been used as evidence before the reindicting grand jury. *See id.* ¶¶ 1-2. In dismissing the resulting indictment, the district court had relied on the 1969 amendment to the grand jury statutes providing that "[a]ll evidence [before the grand jury] must be such as would be legally admissible upon trial." *Stevens*, 1979-NMCA-058, ¶ 2 (alterations in original) (quoting NMSA 1978, Section 31-6-11 (1979)). The Court of Appeals reversed the dismissal, holding that notwithstanding the new statutory direction regarding legally admissible evidence, *Chance* still precluded any judicial review of the propriety of evidence before the grand jury. *See Stevens*, 1979-NMCA-058, ¶ 4.

**{21}** This Court endorsed the holdings of *Paul*, *Ergenbright*, and *Stevens* in *State v. Maldonado*, 1979-NMSC-102, ¶¶ 6-7, 93 N.M. 670, 604 P.2d 363. *Maldonado* accepted the defendant's claim that inadmissible evidence presented to a grand jury included fruits of a search and seizure, the defense attorney's statement to a police officer, and the defendant's silence after advice of his *Miranda* rights. *Id.* ¶¶ 4-5. We held that the district court was without authority to dismiss the resulting indictment, agreeing with *Paul* that the Legislature's decision not to textually provide a right of judicial review when promulgating the 1969 amendments to the grand jury statutes confirmed the continued vitality of *Chance*. *See Maldonado*, 1979-NMSC-102, ¶ 7. We also noted that the Legislature had more recently amended the statutes in 1979, but "chose not to give the New Mexico courts the authority to review evidence supporting a grand jury indictment." *Id.*

**{22}** The 1979 amendment added a new provision that required the prosecutor to submit to the grand jury evidence that "directly negates the guilt" of the defendant. NMSA 1978, § 31-6-11(B) (1979). In *Buzbee*, 1981-NMSC-097, ¶ 83, this Court reviewed the resulting version of the statutes and again held that in the absence of clear statutory authority, "the courts are without power to review the sufficiency, legality or competency of the evidence upon which an indictment is returned."

**{23}** As *Buzbee* noted in dicta, the 1981 legislative session resulted in more amendments to the grand jury statutes, eliminating the requirement that grand jury evidence must be "legally admissible upon trial" and adding a clause that "'[t]he sufficiency [or] competency of the evidence upon which an indictment is returned shall not be subject to review absent a showing of bad faith on the part of the prosecuting attorney assisting the grand jury.'" *Id.* ¶ 30 (quoting NMSA 1978, Section 31-6-11(B) (1981) and observing that New Mexico law "has gone full circle back to the common law" and is consistent with federal jurisprudence, which bars inquiry into the admissibility of evidence considered by a grand jury). In basing its holding on both principles of grand jury independence and the practical unworkability of postindictment evidence reviews, *Buzbee* relied on a great body of federal law. *See id.* ¶¶ 17-25.

**{24}** *Buzbee* agreed with federal precedents criticizing a postindictment evidence review

6

that would require a "'preliminary trial to determine the competency and adequacy of the evidence before the grand jury.'" *Id.* ¶ 23 (quoting *Costello v. United States*, 350 U.S. 359, 363 (1956)); *see also United States v. Calandra*, 414 U.S. 338, 349-50 (1974) (holding that federal courts could not preclude a grand jury's consideration of evidence that would be suppressible at trial, observing that "[a]ny holding that would saddle a grand jury with minitrials and preliminary showings would assuredly impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws" (internal quotation marks and citation omitted)).

**{25}**    Section 31-6-11(A) was most recently amended in 2003 and now provides:

> Evidence before the grand jury upon which it may find an indictment is that which is lawful, competent and relevant, including the oral testimony of witnesses under oath and any documentary or other physical evidence exhibited to the jurors. The Rules of Evidence shall not apply to a grand jury proceeding. The sufficiency of the evidence upon which an indictment is returned shall not be subject to review absent a showing of bad faith on the part of the prosecuting attorney assisting the grand jury.

Section 31-6-11(A) (2003).

**{26}**    The first case to consider the current version of the statute, as amended in 2003, was *State v. Romero*, 2006-NMCA-105, ¶ 2, 140 N.M. 281, 142 P.3d 362. In *Romero*, the Court of Appeals confirmed the applicability of *Chance*, holding that "(1) the 2003 version of Section 31-6-11(A) is directory and for the guidance of the grand jury, and (2) the Legislature has not authorized judicial review of the evidence presented to a grand jury except for its sufficiency and then only upon a showing of prosecutorial bad faith." *Romero*, 2006-NMCA-105, ¶ 5. *Romero* also observed that because the 2003 amendments added the second sentence of Section 31-6-11(A) providing that the Rules of Evidence shall not apply in a grand jury proceeding and deleted the words "or competency" after "sufficiency" in the final sentence, the Legislature demonstrated its "intent to limit, not to expand judicial review, as compared to the 1981 version . . . ." *Romero*, 2006-NMCA-105, ¶ 7; *see also State v. Gallegos*, 2009-NMSC-017, ¶¶ 9-11, 146 N.M. 88, 206 P.3d 993 (citing *Romero* with approval and rejecting a challenge to a grand jury indictment that was allegedly based on inadmissible hearsay evidence).

**{27}**    The reluctance of the legislative and judicial branches to permit judicial review of the quality or quantity of evidence considered by the grand jury does not mean that we will not step in to prevent prosecutorial abuse of the "structural protections that safeguard the grand jury's ability to perform its constitutional function." *Herrera v. Sanchez*, 2014-NMSC-018, ¶¶ 14, 26-27, 32, 328 P.3d 1176 (ordering dismissal of an indictment because a prosecutor unlawfully prevented the grand jury from hearing a target defendant's answer to questioning by the grand jury and misinstructed the grand jury on the applicable law); *see also De Leon v. Hartley*, 2014-NMSC-005, ¶¶ 16-17, 316 P.3d 896 (ordering dismissal of

7

an indictment because the prosecutor's office unlawfully exercised control over the selection and excusal of grand jurors); *State v. Ulibarri*, 2000-NMSC-007, ¶¶ 1, 3, 128 N.M. 686, 997 P.2d 818 (affirming dismissal of an indictment for failure of prosecution to comply with "mandated constitutional and statutory requirements for instructing the grand jury on the essential elements of the offenses"); *Baird v. State*, 1977-NMSC-067, ¶¶ 2, 4-10, 90 N.M. 667, 568 P.2d 193 (holding that a prosecutor's presence during secret grand jury deliberations is grounds for dismissal of a resulting indictment); *Davis v. Traub*, 1977-NMSC-049, ¶¶ 10-11, 90 N.M. 498, 565 P.2d 1015 (holding that the presence of an unauthorized person during grand jury proceedings required dismissal of the resulting indictment). But as *Stevens* pointed out in rejecting an argument that structural defect cases like *Baird* and *Davis* retreated from the holding in *Chance*, "[n]one of these decisions involved evidence presented to the grand jury" and therefore "did not modify *State v. Chance*." *Stevens*, 1979-NMCA-058, ¶ 5.

**{28}**     In *Jones v. Murdoch*, 2009-NMSC-002, 145 N.M. 473, 200 P.3d 523, for example, we were faced with a structural integrity problem in fashioning a procedure by which we could help ensure compliance with the mandate of Section 31-6-11(B) that the grand jury be made aware of exculpatory evidence, in light of the fact that the statute "contains no express or implied authorization for judicial review of the evidence to insure that the grand jury considered evidence that disproves or reduces a charge or that makes an indictment unjustified." *Jones*, 2009-NMSC-002, ¶ 19 (internal quotation marks and citation omitted). We created a preindictment dispute resolution system that would not second-guess the grand jury's decision after the fact but instead would, as the Legislature intended, "give the grand jury greater access to pertinent evidence." *Id.* ¶ 25.

**{29}**     The consideration by the grand jury of the evidence in this case involves no structural defect that could have interfered with the grand jury process; like *Stevens* and *Maldonado*, this case relates solely to an argument that unlawful official conduct led to the discovery of inculpatory evidence that was then presented to and considered by the grand jury. It is strikingly similar to the situation in *State v. Eder*, 1985-NMCA-076, ¶¶ 2-3, 103 N.M. 211, 704 P.2d 465, in which a prosecutor without lawful grand jury authorization issued what facially appeared to be grand jury subpoenas seeking financial records relating to the defendants. The prosecutor then procured indictments on the basis of the information gained from the subpoenas. *Id.* The district court not only suppressed the fruits of the subpoenas from admission at trial, it also dismissed the indictments that had been procured with those fruits. *Id.* ¶ 4. The Court of Appeals reversed the dismissal, noting that grand jury indictments should be left undisturbed unless a prosecutor has engaged in "deceitful or malicious overreaching which subverts the grand jury proceedings" and that in cases where "inadmissible evidence is presented to the grand jury, the proper remedy is suppression at trial" and not dismissal of the indictment. *Id.* ¶ 9.

**{30}**     This case also does not involve a challenge to the sufficiency of the evidence as a whole to support the indictment, in which case an inquiry into the good or bad faith of the prosecutor might be called for by Section 31-6-11(A). In that regard, we note that the statute

8

appears to address bad faith in presentation of evidence to the grand jury, such as deceiving the grand jury as to the probative value of the evidence, but not bad faith in the initial acquisition of probative evidence that may be subject to suppression at trial. *Cf. State v. Reese*, 1977-NMCA-112, ¶ 11, 91 N.M. 76, 570 P.2d 614 (holding that an indictment procured by a prosecutor's knowing use of false evidence violated due process). We therefore need not revisit our determination in the related attorney disciplinary action that the evidence in this case does not show that the deputy district attorney and district attorney "exhibited bad faith or an intent to deceive." *Chavez*, 2017-NMSC-012, ¶ 24.

**{31}** We also reject Defendants' argument that the State based its indictment on false evidence. The claimed falsity was not in the evidence showing the commission of the crime; it was in the alleged misrepresentation that "the genesis of [the officer's] investigation, and the additional evidence he derived therefrom, was predicated on lawfully-obtained evidence." In other words, the grand jury was not misled about Defendants' guilt, whether or not it was implicitly or explicitly misled about the potential suppressibility of the evidence obtained from the subpoenas. Defendants' theory is not only inconsistent with the reasons for guarding against false or perjured testimony in obtaining an indictment, it would negate the entire body of state and federal case law rejecting review of the admissibility of evidence considered by the grand jury. As the above cases emphasize, suppression is a remedy for court determination in pretrial proceedings and is not one the grand jury is either equipped or called upon to decide. *See* Rule 5-212(C) NMRA (providing that motions to suppress shall be filed no less than sixty days prior to trial).

**{32}** The exhaustive review in this section confirms that neither the New Mexico grand jury statutes nor decades of consistent case law reflect any retreat from the principles or holdings of *Chance* and *Buzbee*. We now address the issue that caused the Court of Appeals to certify this case to us, the possible conflict between that extensive body of law and the language of a recent amendment to our Rules of Criminal Procedure for the District Courts.

**D.      Rule 5-302A(F) NMRA Must Be Amended to Conform to the Law**

**{33}** In the concluding sentence of our opinion in *Jones*, we noted that although we had described a workable framework for advance notification to the grand jury of potentially exculpatory evidence, "we also request[ed] that our Rules of Criminal Procedure for the District Courts Committee consider whether rule amendments are needed based upon the procedure we have outlined." 2009-NMSC-002, ¶ 43.

**{34}** Our rules committee in response recommended promulgation of an entirely new Rule, 5-302A, which this Court adopted in Supreme Court Order No. 10-8300-015, effective for target notices filed on or after May 14, 2010. As the official committee commentary reflected, the new rule was intended to deal with resolving disputes related to "a prosecutor's request to be relieved of the duty to alert the grand jury to the target's evidence or defenses." Rule 5-302A cmt. (Comm.). The provision of that new rule that is material to the issues in this case is contained in Rule 5-302A(F)(2), which in part copies language from Section 31-

9

6-11(A) but in part adds language never contained in any New Mexico grand jury statute:

> **Scope of review.** Failure to follow the procedures set forth in this rule shall be reviewable in the district court. The weight of the evidence upon which an indictment is returned shall not be subject to review absent a showing of bad faith on the part of the prosecuting attorney assisting the grand jury, but the grand jury proceedings, the indictment, *and the lawfulness, competency, and relevancy of the evidence shall be reviewable by the district court*.

Rule 5-302A(F)(2) (emphasis added).

**{35}**    Defendants argue that although the highlighted addition "appears to deviate from prior law regarding a district court's ability to review evidence before the grand jury, . . . this Court properly exercised its powers when promulgating Rule 5-302A as it ensures that the prosecutor acting as an aide to the grand jury presents only that evidence the grand jury may properly consider." There are two flaws in this argument.

**{36}**    First, this Court is not a legislative body. It has no authority to transgress the Legislature's prerogatives through conflicting court rules. And as we have observed in precedent after precedent, the Legislature has not acted to give New Mexico courts the authority to review grand jury proceedings to determine the lawfulness, competency, or relevancy of the evidence considered by the grand jury. While this Court promulgates and adjusts court procedures through rules changes, it would be inappropriate to fashion procedural rules to overturn judicial precedent construing statutes or the common law.

**{37}**    Second, although a broad reading of the concluding language in Rule 5-302A(F)(2) could be argued as authorizing the very kind of postindictment evidentiary review that decades of case law have held to be unprincipled in light of the independence of the grand jury, beyond statutory authorization, and unworkable in practice, to do so was not this Court's intention in adopting the rule proposed by its Rules of Criminal Procedure for District Courts Committee. The focus of the proposed new rule was, as stated in the committee chair's cover letter to this Court, "the committee's proposal for a new grand jury rule and forms based on the Court's recent opinion in *Jones v. Murdoch*." The references in that letter to lawfulness, competency, and relevancy of evidence all relate to resolving disputes in preindictment proceedings regarding whether defense-offered exculpatory evidence meets statutory standards for consideration by the grand jury. Nothing in the letter submitted by the committee reflects that the questioned language was meant to create unprecedented new authority for a postindictment challenge to evidence before the grand jury. The published committee commentary gives no hint that such a drastic rewriting of New Mexico law was intended, focusing only on preindictment resolution of alleged exculpatory evidence that is statutorily required to be made known to the grand jury, as addressed in *Jones*.

**{38}**    As this case demonstrates, the ambiguous wording of Rule 5-302A(F) has spawned

10

confusion and needless litigation. Upon further review, we deem it advisable to delete the clause, "but the grand jury proceedings, the indictment, and the lawfulness, competency, and relevancy of the evidence shall be reviewable by the district court." Rule 5-302A(F)(2). To the extent the questioned language could be read to confirm our holding in *Jones* that the district court may determine the propriety of alleged exculpatory evidence the defense contends should be made known to the grand jury, that topic is covered in Subsection (B)(4) of Rule 5-302A; and to the extent it can be read to overturn existing case law and authorize a postindictment review of the quality or quantity of evidence considered by the grand jury, it would contravene established law. We therefore are entering an order with this opinion withdrawing that language from Rule 5-302A(F), effective immediately.

## III.    CONCLUSION

{39}    We hold that the district court lacked authority to review the admissibility of evidence considered by the grand jury. We reverse the resulting order of dismissal and remand this matter to the district court for further proceedings in accordance with this opinion.

{40}    **IT IS SO ORDERED.**

_____
**CHARLES W. DANIELS, Justice**

**WE CONCUR:**

_____
**JUDITH K. NAKAMURA, Chief Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**BARBARA J. VIGIL, Justice**

_____
**EDWARD L. CHÁVEZ, Justice, retired,
sitting by designation**