**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number:   2016-NMCA-065**

**Filing Date:  May 11, 2016**

**Docket No. 34,110**

**STATE OF NEW MEXICO,**

      **Plaintiff-Appellee,**

**v.**

**CHAD DEIGNAN,**

      **Defendant-Appellant.**

**INTERLOCUTORY APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Briana H. Zamora, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Acting Chief Public Defender
Matthew J. O'Gorman, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**HANISEE, Judge.**

**{1}** A grand jury heard testimony from a Bernalillo County Sheriff's Office detective that Defendant had touched seven-year-old A.G.'s genital area over her clothing, grabbed A.G.

by the hips to prevent her from leaving, and asked A.G. to touch his penis.[1] The prosecutor submitted to the grand jury a proposed indictment charging Defendant with (1) second-degree criminal sexual contact of a minor (CSCM) in violation of NMSA 1978, Section 30-9-13(A) (2004); (2) third-degree CSCM in violation of Section 30-9-13(C); (3) attempted second-degree CSCM (child under thirteen) in violation of NMSA 1978, Section 30-28-1 (1963) and Section 30-9-13(A); (4) kidnapping in violation of NMSA 1978, Section 30-4-1 (2004); (5) intentional child abuse or in the alternative negligent child abuse, in violation of NMSA 1978, Section 30-6-1(D) (2009); (6) tampering with evidence, in violation of NMSA 1978, Section 30-22-5 (2003); and (7) bribery of a witness, in violation of NMSA 1978, Section 30-24-3(A)(3) (1997).

{2}     Before the grand jury began to deliberate on the indictment, the prosecuting attorney asked the detective witness a series of leading questions that summarized relevant aspects of the detective's testimony and tied this testimony to the charges in the indictment. For example, the prosecuting attorney asked the detective, "So the [c]harges for the [s]exual [c]ontact, for touching [A.G.] over the clothes and also touching her inner thigh on the skin, is the [c]riminal [s]exual [c]ontact that they talked about? That she talked about?" To which the detective responded, "That [A.G.] talked about[,] yes." Similarly, with respect to the attempted second-degree CSCM charge, the prosecutor asked the detective if "the attempted Criminal Sexual Contact, would be that [Defendant] asked [A.G.] to touch his penis?" The detective answered, "Correct."

{3}     The prosecutor asked additional leading questions that followed the same template—tying an alleged fact from the detective's testimony to an element of an offense charged in a proposed indictment—for the remaining charges. At the conclusion of these leading questions, a juror asked the detective to describe the physical layout of the alleged crime scene, apparently wondering why there had been no other eyewitnesses to the encounter. After the detective's testimony, the grand jury returned true bills on all counts of the proposed indictment.

{4}     Defendant filed a motion to dismiss, arguing that the prosecuting attorney's leading questions led the grand jury to indict him based on insufficient evidence and that the prosecutor had failed to properly instruct the grand jury with the elements of the crimes charged in the indictment. Citing NMSA 1978, Section 31-6-11(A) (2003), which provides that "[t]he sufficiency of the evidence upon which an indictment is returned shall not be subject to review absent a showing of bad faith on the part of the prosecuting attorney assisting the grand jury[,]" the district court rejected this argument and denied the motion.[2]

_____

[1]This testimony was based on accounts given to police by A.G. and her friend who witnessed the alleged assault.

[2]The district court dismissed the tampering with evidence count without prejudice, agreeing with Defendant that the prosecutor had failed to properly instruct the grand jury

The district court wrote that it "would have preferred that the prosecutor not use leading questions to elicit testimony from its sole witness . . . [but] Defendant failed to meet [his] burden in showing the prosecutor acted in bad faith."

**{5}** Defendant filed a motion to reconsider, arguing that the district court's decision was erroneous in light of our Supreme Court's recent decision in *Herrera v. Sanchez*, which held that a prosecutor may not "present[] the equivalent of a closing argument regarding how the grand jurors should interpret the instructions as they relate to [the target of its investigation]." 2014-NMSC-018, ¶ 30, 328 P.3d 1176. The district court denied Defendant's motion to reconsider, reasoning that the prosecutor's leading questions "summarized what was already testified to by [the d]etective[.]" The district court certified its ruling for interlocutory review under NMSA 1978, Section 39-3-3(A)(3) (1972). We granted Defendant's request for leave to file an interlocutory appeal and now affirm in part, reverse in part, and remand for further proceedings.

**{6}** As noted by the district court in its denial of Defendant's motion to dismiss, Section 31-6-11(A) prohibits district court review of the sufficiency of the evidence in support of an indictment "absent a showing of bad faith on the part of the prosecuting attorney assisting the grand jury." Defendant contends that the district court erred in finding that the prosecutor's leading questions did not amount to bad faith because no reasonable prosecutor would have asked leading questions that suggested the existence of probable cause when the evidence did not support such a finding. But a fair reading of Section 31-6-11(A) is that not every indictment based on insufficient evidence is the result of prosecutorial bad faith; the purpose of the statute is to restrict sufficiency of the evidence review (and the delay that such a review entails) to circumstances where an indictment results from intentional misconduct on the part of the prosecutor, not simply negligence or even recklessness. *See State v. Romero*, 2006-NMCA-105, ¶¶ 7, 8, 140 N.M. 281, 142 P.3d 362 (discussing the "bad faith" element in Section 31-6-11(A) as a "statutory condition precedent to judicial review" of the sufficiency of the evidence supporting an indictment). We think the best way to give effect to this purpose is by giving the phrase "bad faith" its ordinary meaning: "[d]ishonesty of belief, purpose, or motive[.]" Black's Law Dictionary 166 (10th ed. 2014). Reading the phrase "bad faith" in Section 31-6-11(A) to imply an objective assessment of a prosecutor's conduct would render the statute's distinction between indictments based on insufficient evidence and prosecutorial bad faith superfluous because no reasonable prosecutor would seek an indictment based on insufficient evidence. *See State ex rel. Children, Youth & Families Dep't v. Christina L.*, 2015-NMCA-115, ¶ 15, 362 P.3d 155 ("[W]e consider the language of the statute as a whole and construe it so that no word and no part of the statute is rendered surplusage or superfluous." (internal quotation marks and citation omitted)).

**{7}** Defendant argues that even if the indictment is not subject to judicial review for sufficiency under Section 31-6-11(A), his motion to dismiss is also cognizable as a

---

with the elements of that crime. The State does not appeal that ruling.

"structural challenge[] involving the manner in which the grand jury process has been conducted[,]" over which our Supreme Court has permitted judicial review without a showing of prosecutorial bad faith. *Herrera*, 2014-NMSC-018, ¶ 12. Defendant argues that this case is analogous to *State v. Sanchez*, 1980-NMCA-137, ¶ 9, 95 N.M. 27, 618 P.2d 371, *overruled on other grounds by Buzbee v. Donnelly*, 1981-NMSC-097, ¶ 46, 96 N.M. 692, 634 P.2d 1244, where this Court disapproved of the prosecuting attorney's presentation of witness testimony at the grand jury proceeding through leading questions.

**{8}** To the extent that the leading question issue addressed in *Sanchez* was not dicta, the factual circumstances in the present case are distinguishable. 1980-NMCA-137, ¶¶ 8-9. In *Sanchez*, all witnesses who testified before the grand jury had their testimony presented through leading questions—the grand jury's determination of probable cause was based entirely on the witnesses' "yes" or "no" answers to those questions. *Id.* ¶ 9. Here, the district court found that the detective "testified in response to open ended questions about what happened on the date in question. [The d]etective provided a lengthy narrative of the alleged incident. The majority of the leading questions summarized what was already testified to by [the d]etective." This finding is supported by substantial evidence, and we do not think the use of leading questions in this manner, especially in light of Section 31-6-11(A)'s express provision exempting grand jury proceedings from the rules of evidence, is the kind of structural error that "strikes at the very heart of the grand jury's assessment of probable cause to indict." *Jones v. Murdoch*, 2009-NMSC-002, ¶ 2, 145 N.M. 473, 200 P.3d 523.

**{9}** Defendant's third argument is that the prosecutor's leading questions "compromis[ed] the grand jury's independent . . . determination of probable cause[,]" and therefore amounted to "structural error" that requires dismissal of the indictment without a showing of prejudice under *Herrera*. *See Herrera*, 2014-NMSC-018, ¶ 30. In *Herrera*, the prosecuting attorney ordered the target not to answer a "direct, relevant question from a grand juror," *id.* ¶ 24, and also told the grand jury that the target's testimony should not be considered because it was an impermissible attempt to make the grand jury consider the consequences of its decision to indict, which is prohibited under the grand jury instructions. *Id.* ¶ 30. Our Supreme Court held that the prosecutor's conduct violated the prosecutor's duty of fairness and impartiality under NMSA 1978, Section 31-6-7(D) (2003) and "interfered with the grand jury's statutory duty to make an independent inquiry into the evidence supporting a determination of probable cause." *Herrera*, ¶¶ 24, 28, 30.

**{10}** Here, the prosecuting attorney did not compromise the grand jury's independent evaluation of the testimony and application of the instructions it had been given. Instead, the prosecuting attorney simply restated certain aspects of the detective's testimony and suggested that this testimony established elements of the offenses charged in the indictment. We think this conduct falls within the scope of the prosecuting attorney's duty to "attend the grand jury, examine witnesses and prepare indictments, reports and other undertakings of the grand jury." Section 31-6-7(A). To hold otherwise would give rise to absurd results. Under Defendant's view of *Herrera*, simply drafting an indictment and handing it to the foreman would compromise the grand jury's independence because such could be argued

4

to suggest that the grand jury should charge the crimes listed in the indictment. We decline to read *Herrera* so expansively.

**{11}** Instead, we understand *Herrera* to require an assessment of the prosecutor's actions, viewed under the totality of the circumstances, in order to determine whether they prevented the jury from "mak[ing] an independent inquiry into the evidence supporting a determination of probable cause." 2014-NMSC-018, ¶ 24. In this case, the district court was correct in its assessment that the prosecuting attorney's leading questions did not work such a compromise on the grand jury's independent judgment because the questions simply summarized the detective's lengthy narrative testimony. It is telling that after the prosecutor's leading questions, a member of the grand jury probed the detective's testimony, asking that he explain the layout of the crime scene to better understand why there were no other witnesses to the alleged crime. Viewed in context, we do not think the prosecutor's leading questions compromised the grand jury's ability to make an independent assessment of probable cause.

**{12}** Defendant finally argues that the prosecutor failed to properly instruct the grand jury with the counts charging defendant with CSCM in the third degree, attempted CSCM in the second degree, and bribery of a witness.[3] *See State v. Ulibarri*, 1999-NMCA-142, ¶ 9, 128 N.M. 546, 994 P.2d 1164, *aff'd*, 2000-NMSC-007, 128 N.M. 686, 997 P.2d 818. In *Ulibarri*, we held that the prosecuting attorney must "specifically direct[] the grand jurors, on the record, to the portions of the grand jury manual where the appropriate elements of the offense or offenses under consideration may be found." *Id.* ¶ 20. We explained that this procedure was necessary in order to enable the grand jury to find "where it can read the elements of each crime charged and how to get additional help if needed" and allow defendants "to verify that the jury was at least referred to the correct set of elements before it was asked to deliberate." *Id.*

**{13}** The State argues that the prosecutor complied with his obligation under *Ulibarri* by referring the grand jury to the pages of the grand jury manual containing instructions for the crimes charged in the indictment. If this was all the prosecutor had done, Defendant would have no argument to make. *Id.* But the prosecutor went beyond his obligation under *Ulibarri* and incorrectly read the elements of three crimes set out in the indictment prepared for the grand jury. For the third-degree CSCM count, the prosecutor referred the grand jury to the page in the manual describing the elements of that charge, but incorrectly told the grand jury that it had the same elements as the second-degree CSCM charge. *See* UJI 14-925 NMRA (uniform jury instruction setting out the elements of second- and third-degree CSCM). As to the attempted second- degree CSCM count, the prosecutor did not tell the grand jury what underlying felony Defendant was being charged with attempting. *See* UJI 14-2801 NMRA

---

[3]Defendant concedes that the prosecutor correctly read the elements of the counts of the indictment charging Defendant with second-degree CSCM, kidnapping, and intentional or in the alternative negligent child abuse.

5

Use Note (requiring a separate instruction for each predicate felony charged in the attempt count). Finally, regarding the bribery of a witness count, the prosecuting attorney failed to instruct the grand jury as to the felony that the witness knew about when Defendant intimidated her. *See* UJI 14-2403 NMRA (requiring a reference to the felony that the witness had knowledge concerning in a bribery of a witness instruction). We agree with Defendant that the prosecutor's erroneous instructions to the grand jury on these counts constitute structural error and require their dismissal without prejudice.

**{14}** The district court's denial of Defendant's motion to dismiss the counts in the indictment charging Defendant with second-degree CSCM, kidnapping, and intentional or in the alternative negligent child abuse is affirmed. We reverse its denial of the motion to dismiss the counts charging Defendant with attempted second-degree CSCM, third-degree CSCM, and bribery of a witness. The case is remanded to the district court with instructions to dismiss those three counts without prejudice.

**{15}     IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**TIMOTHY L. GARCIA, Judge**